UNITED STATES of America

v.

Francis IANNARELLA, Jr.

Civ. No. 97–2779.
Crim. No. 88–00003–05.

United States District Court,
E.D. Pennsylvania.

Sept. 8, 1997.

David E. Fritchey, Asst. U.S. Atty., Philadelphia, PA, for Government.

Jeremy Gelb, Philadelphia, PA, for Defendant.

### *MEMORANDUM AND ORDER*

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

On November 19, 1988, Francis Iannarella was convicted by a jury in a major mafia trial of RICO, RICO Conspiracy, and Illegal Gambling Business in violation of 18 U.S.C. §§ 1962(c) & (d) and 1955. The jury specifically found him guilty of 18 RICO predicate acts. These acts included four murders, two attempted murders, seven murder conspiracies, one illegal lotteries business, one illegal debt scheme and nine extortions.[1] Post verdict motions were denied, *United States v. Scarfo,* 711 F.Supp.' 1315 (E.D.Pa.1989), and this court sentenced Mr. Iannarella to 45 years imprisonment on May 9, 1988. The sentence consisted of a 20 year term for Count One, a 20 year term for Count Two, and a 5 year term for Count Three—all to be served consecutive to a life sentence imposed by the Philadelphia County Court of Common Pleas for the first degree murder of Frankie "Flowers" D'Alfonso. The Court of Appeals affirmed Mr. Iannarella's federal

---

1. There are more than 18 acts listed because some of the predicate acts had two parts.

convictions and the Supreme Court denied certiorari. *United States v. Pungitore*, 910 F.2d 1084 (3d Cir.1990), *cert. denied*, 500 U.S. 916, 111 S.Ct. 2009–11, 114 L.Ed.2d 98 (1991). The state murder conviction, however, was subsequently reversed by the Pennsylvania Superior Court, *Commonwealth v. Scarfo*, 416 Pa.Super. 329, 611 A.2d 242 (1992). Mr. Iannarella was retried on this charge in early 1997 and was acquitted.

On April 22, 1997, two days before the new statute of limitations period expired pursuant to the Anti–Terrorism and Effective Death Penalty Act of 1996, Mr. Iannarella filed the instant motion for relief under 28 U.S.C. § 2255. He makes three claims: (1) that his consecutive sentences for RICO and RICO Conspiracy violated the Fifth Amendment's prohibition against double jeopardy; (2) that his sentence was based upon his conviction in the D'Alfonso state murder case in which he was later given a new trial and acquitted; and (3) that he was gulled by the government into pursuing a joint defense strategy with codefendant Mr. Scarfo's attorney, Mr. Simone, and that a conflict of interest existed between Mr. Iannarella and Mr. Simone which the Petitioner never waived. As the facts of this case have been much discussed by this court previously, *see Scarfo*, 711 F.Supp. 1315, we will not repeat ourselves.[2]

## II. DISCUSSION

### A. Double Jeopardy

■ Mr. Iannarella argues that the imposition of consecutive sentences for RICO and RICO Conspiracy violates the double jeopardy clause of the Fifth Amendment. His complaint stems from the recent Supreme Court decision of *Rutledge v. United States*, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), in which the Supreme Court held that conspiracy to distribute controlled substances (21 U.S.C. § 846) is a lesser included offense of the continuing criminal enterprise offense ("CCE") (21 U.S.C. § 848) and thus convictions of both cannot amount to consecutive sentences. Armed with *Rutledge*, Mr. Ian-

narella demands that we reconsider the Court of Appeals' decision in *Pungitore*, 910 F.2d at 1115–L7, that the imposition of consecutive sentences for RICO and RICO Conspiracy does not violate the Fifth Amendment. We disagree.

The question of whether the double jeopardy clause of the Fifth Amendment prohibits consecutive sentencing for RICO Conspiracy and substantive offenses (18 U.S.C. §§ 1962(c) & (d)) has already been litigated and decided on Mr. Iannarella's direct appeal. "Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255." *United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir.1981) (*citing Kaufman v. United States*, 394 U.S. 217, 227 n. 8, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969)); *see also Reed v. Farley*, 512 U.S. 339, 358, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (J. Scalia, concurring) ("claims will ordinarily not be entertained under § 2255 that have already been rejected on direct review."). There is a great interest in the finality of litigation; matters fully addressed and decided on direct appeal should not be reexamined lightly.

In Mr. Iannarella's direct appeal, the Court of Appeals discussed the issue of consecutive sentences for RICO and RICO Conspiracy in detail. Specifically, they addressed the question in light of another Supreme Court decision, *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), and held that the vast differences between § 1962 and §§ 846, 848 merited the conclusion that while consecutive sentences were not valid for the latter, they were for the former. Citing *United States v. Marrone*, 746 F.2d 957 (3d Cir. 1984), which in turn cited *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the court further held that the statutory provisions in §§ 1962(c) & (d)

---

2. Although we ordered the government to file an answer on April 25, 1997, and extended the time to do so on June 6, 1997, upon further review we believe that we can deal with the issues raised in this motion without a formal response from the government. We are also aware that the government has had to respond to a large number of these motions as of late.

defined different offenses under the law, and as such cumulative punishment was presumptively valid. The court found no legislative intent to prevent consecutive sentencing, and that there was nothing within the CCE statute, or the cases which interpret it, that required otherwise. *Pungitore,* 910 F.2d at 1115–1116. Given the depth of the Third Circuit's discussion, we see no reason to revisit the issue.

We find, however, that even if we were to reconsider the Court of Appeals' decision pursuant to *Rutledge,* there is nothing in that opinion which would give us pause. Contrary to Mr. Iannarella's interpretation, the Supreme Court case is quite frankly in line with the Third Circuit's assessment of § 846 and § 848. The *Rutledge* court followed the logic in *Jeffers,* and, using the "same offense" test, held that consecutive sentences could not be imposed for CCE and CCE conspiracy because they are the same offense. The Supreme Court made no comparison or connection between the CCE and RICO statutes. In fact, it noted that its holding was not contrary to the holding in *Garrett v. United States,* 471 U.S. 773, 794–95, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) that conspiracy and the substantive crime that is the object of the conspiracy are distinct offenses. *Rutledge,* 517 U.S. at 299–300, 116 S.Ct. at 1247. As such, nothing in *Rutledge* undermines the ruling in *Pungitore* that RICO and RICO Conspiracy are separate offenses because of the different elements of proof required; indeed, the rationale and holding of the cases are materially identical. We therefore decline to reevaluate the measured opinion of the Court of Appeals. *See United States v. Scarfo,* 970 F.Supp. 426, 428–29 (E.D.Pa.1997).

*B. Sentencing*

■ Mr. Iannarella next argues that he is entitled to resentencing because "Petitioner was sentenced based on the belief that he was guilty of the first degree murder of Frankie Flowers," a murder of which he was later acquitted. *Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion")* at 4. Mr. Iannarella apparently believes that because his federal sentence was given consecutive to his state sentence in the D'Alfonso case, we were influenced in sentencing by that state conviction. Now that Mr. Iannarella has been given a new trial and has been acquitted in the D'Alfonso case, he argues that we must resentence him without reference to the state matter. Again, we do not agree.

At Mr. Iannarella's sentencing, we heard both Mr. Robert Simone (Mr. Scarfo's trial attorney), who was filling in for Mr. Iannarella's regular trial counsel, Mr. Madden (who was trying another case in New Jersey), and from the government on the issue of sentencing. At this hearing we made certain that Mr. Iannarella had not been threatened by anyone and voluntarily wished Mr. Simone to represent him at sentencing. We also made certain that the Petitioner waived any conflicts with Mr. Simone. We also offered Mr. Iannarella the opportunity to continue the hearing so that Mr. Madden could represent him. The Petitioner, however, chose to go forward with Mr. Simone representing him:

MR. SIMONE: [Mr. Madden] is on trial in Newark in a District Court of New Jersey. I spoke with Madden, I spoke with Mr. Iannarella, who I know personally. Mr. Madden asked me if I would substitute for him. Mr. Iannarella also asked. And, further, Mr. Madden had sent the presentence report to Mr. Iannarella before my intervention and he's prepared to waive this—whatever rights are accrued with regard to Mr. Madden not being here.

THE COURT: All right. I appreciate that. And, you agree with what . . .

MR. IANNARELLA: Yes, Your Honor.

THE COURT: Doing this voluntarily?

MR. IANNARELLA: Uh-huh.

THE COURT: Lets see, nobody threatened you in any way to get you to do this? Okay. Nobody promised you anything to get you to do this? You haven't had drugs or alcohol today or anything of that nature?

MR. IANNARELLA: No.

THE COURT: All right. And, you understand that your own attorney might be more familiar with things that occurred

during the trial—and that Mr. Simone, you understand that?

MR. IANNARELLA: Right. No problem.

THE COURT: You further understand that Mr. Simone also represents Mr. Scarfo in this case, and an attorney really can't have two loyalties, that he might have a loyalty to him and not to you, do you understand that?

MR. IANNARELLA: Yes, Your Honor.

THE COURT: All right. Nevertheless, do you wish to voluntarily proceed to have him . . .

MR. IANNARELLA: Yes, sir.

THE COURT: . . . represent you in this proceeding?

MR. IANNARELLA: Yes.

THE COURT: All right. Because I would be happy to continue the matter.

MR. IANNARELLA: No, it's no problem Your Honor.

THE COURT: All right. Thank you very much, sir.

MR. SIMONE: Thank you, Your Honor.

THE COURT: Oh, one other thing. I mean you've gone over the presentence report . . .

MR. IANNARELLA: Yes, sir.

THE COURT: . . . with him? Okay. Very well.

Tr. 5/9/89 at 3–5.

During the hearing the government asked that the pre-sentence report be amended to include the state court conviction for the murder of Frankie D'Alfonso. Mr. Iannarella's counsel did not object to this motion and we amended the pre-sentence report. Tr. 5/9/89 at 13–14. Mr. Iannarella's attorney also asked us to amend the pre-sentence report to eliminate a reference to the exact amount of money Mr. Iannarella received as a capo in the Scarfo crime family. We granted Mr. Iannarella's motion to amend this portion of the pre-sentence report. *Id.* at 6–10.

We then heard passionate arguments from both Mr. Simone and the government. After careful consideration, we imposed our sentence:

THE COURT: First of all, let me assure you, Mr. Simone and you, Mr. Iannarella, that I have listened to everything that was said here and I do take that into account. I take into account the trial evidence, but I also take into account the things that your attorney has said and that the Government has said. And, I consider the presentence report in light of the corrections that he made today and I've tried to give individual consideration to every defendant in this case, including you, sir. I have taken into account your war record, your medical problems—the ulcers, I'm aware of that situation—and your history and your character and condition. I also have to take into account that you held a leadership position in this organization. You were involved in four murders and three attempted murders. This is about the most difficult thing a judge has to do, and I am speaking to you from the heart. I do a job that I feel has to be done but I take no pleasure in it.

Accordingly, I feel in your case, the following sentence is appropriate. That the defendant is hereby committed to the custody of the Attorney General of the United States of America, or his authorized representative, for imprisonment for a term of 45 years, on condition that the defendant be confined in a jail-type institution and the Court recommends an institutional security level of five or more.

I'm not going to impose a fine. I do have to impose an assessment of $150, which I do at this time. This sentence is composed of a sentence of 20 years on Count One, a sentence of 20 years on Count Two, which is consecutive, and a sentence of five years on Count Three. I've imposed no fine, but I'm going to make this consecutive with the State sentence that Judge Clark has imposed.

Tr. 5/9/89 at 25–26.

The only manner in which the D'Alfonso case impacted our sentence is that we imposed our sentence consecutive to, and not concurrent with, the state sentence. The sentence itself was not influenced by this prior state conviction. *Cf. United States v. Lyons,* 706 F.2d 321, 335 n. 25 (D.C.Cir.1983)

(resentencing only necessary where it cannot be ascertained whether the district court's sentence was influenced by a conviction that was later overturned). As we stated at sentencing, Mr. Iannarella was convicted of RICO, RICO Conspiracy and Illegal Gambling Business with 18 underlying Racketeering Acts, including four murders and three attempted murders. This alone justifies the maximum penalty as set out by Congress, without any reliance on the state conviction. The fact that the state sentence has been voided due to acquittal on re-trial does not impact and cause us to change the actual sentence we imposed. It only impacts when Mr. Iannarella will begin serving it. Resentencing is therefore not required. ·See Scarfo, 970 F.Supp. at 429–30.

### C. Joint Defense Claims

Mr. Iannarella seems to argue that he must receive a new trial because he, along with the 16 other defendants, pursued a joint defense strategy with Mr. Robert F. Simone, Nicodemo Scarfo's lawyer, as lead attorney. Though Mr. Iannarella was represented by his own lawyer at trial, Mr. Robert Madden, Mr. Iannarella claims that Mr. Simone's "conflicts were such that they destroyed Petitioner's fair trial right and they were not fully disclosed to the Petitioner." *Motion* at 5. Mr. Iannarella complains that Mr. Simone "was permitted to function as lead counsel without Petitioner's knowing and intelligent consent for had [Petitioner] known the nature and extent of Simone's conflicts he would have objected to the presentation of a unified defense through Attorney Simone." *Id.* Mr. Iannarella also contends that "the government had an obligation to reveal the nature and extent of Mr. Simone's conflicts beyond what it did reveal." *Id.*[3]

Unfortunately for Mr. Iannarella, we cannot consider any of these arguments because the petitioner failed to raise any such claims on appeal and thus they are procedurally defaulted. Yet, even if we could consider Mr. Iannarella's demand for a new trial based upon Mr. Simone's "joint representation," we would dismiss each of his arguments as meritless.

### 1. Mr. Iannarella's Joint Defense Claims are Procedurally Defaulted.

■ Mr. Iannarella has failed to raise any joint defense claims on direct appeal. He is therefore procedurally barred from raising this claim for the first time in his instant § 2255 motion.

■ The Supreme Court has held that if a § 2255 petitioner failed to properly raise an issue in trial or on direct appeal, he will be procedurally barred from raising the issue in a collateral attack unless he can show cause and actual prejudice. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir.1993). To show "cause," a petitioner must demonstrate that the reason for failing to raise the issue is something that cannot be fairly attributed to him. To show "actual prejudice," a petitioner must establish that any errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension. *Frady*, 456 U.S. at 167–69.

■ Mr. Iannarella had no cause for failing to raise these issues on appeal. Indeed, Mr. Pungitore, one of Mr. Iannarella's co-defendants, raised joint defense issues very similar to Mr. Iannarella's on appeal to the Third Circuit. *See Pungitore*, 910 F.2d at 1139–41. Furthermore, Mr. Iannarella suffered no actual prejudice from engaging in a joint defense with Mr. Simone. The 17 defense counsel involved in this case had elected to pursue an overall unified defense strategy which consisted primarily of denying the existence and criminal purpose of La Cosa Nostra, denying the defendants' participation in it, and attacking the credibility of the government's principal cooperating witnesses. This strategy, consciously chosen by the defendants, had proven successful in several prior trials involving the same defendants. Since Mr. Iannarella can show neither cause for nor prejudice from his procedural default, he is prohibited from raising his joint defense arguments in the instant Motion. Still, even if Mr. Iannarella's joint

**3.** Mr. Iannarella does not elaborate on the exact nature of these conflicts.

defense claims were not barred, they would fail on their merits.

## 2. Conflict of Interest

■ Mr. Iannarella asserts that a conflict of interest existed between Mr. Simone and Mr. Iannarella. On September 9, 1988 the government raised the issue of a possible conflict of interest between Mr. Simone and his client, Mr. Scarfo. As discussed in open court on that day, Mr. Simone had been implicated by the cooperating witnesses in the extortion of Mr. William Rouse, a charged offense in the instant trial. In addition, a number of the photographs that the government planned to introduce as evidence included Mr. Simone, and one of the cooperating witnesses would testify that Mr. Simone was present during the discussion of one of the RICO predicate act murders. Tr. 9/9/88 at 44–47. Following this discussion, and following an extensive colloquy, Mr. Scarfo waived these conflicts in open court.

Unfortunately, Mr. Iannarella's argument that the Court should have provided him an opportunity to waive Mr. Simone's conflicts as well neglects one crucial point: Mr. Simone was not his attorney at any point during the fact finding phase of this trial. Father, Robert Madden represented Mr. Iannarella at trial. Mr. Madden participated fully at trial, cross-examining both of the government's key witnesses—Mr. DelGiorno, Tr. 10/15/88 at 58–103, and Mr. Caramandi, Tr. 11/1/88 at 146–158, 177–78, and presenting a closing argument that not only bolstered the overall defense strategy, but that also was tailored specifically toward defending Mr. Iannarella. Tr. 11/16/88 at 6–41.

The only point where Mr. Simone actually represented Mr. Iannarella was at sentencing. As discussed in Part B, we questioned Mr. Iannarella extensively on the issue of letting Mr. Simone represent him at this phase and received a knowing and intelligent waiver from the Petitioner. We established that he had not been threatened by anyone and voluntarily wanted Mr. Simone to represent him. We even offered Mr. Iannarella a continuance so that his own lawyer could be present at sentencing, but Mr. Iannarella declined and chose to go forward at sentencing with Mr. Simone's representation. Tr. 5/9/89 at 3–5. Petitioner, in any case, does not assert that his Sixth Amendment rights were violated by Mr. Simone's representation at sentencing, instead he complains about Mr. Simone's role as "lead counsel," and the "presentation of a unified defense." *Motion* at 5.

■ It is inescapable that Mr. Iannarella "cannot even assert a conflict of interest impeding Simone's representation of [him] because Simone represented only Scarfo. While Simone may have figure prominently in formulating and presenting the unified defense, that does not mean that he enjoyed an attorney-client relationship with very appellant in this case." *United States v. Pungitore*, 910 F.2d 1084, 1143 (3d Cir.1990). Indeed, the employment of a joint defense strategy does not establish an attorney-client relationship between every defense attorney and every defendant in a case. *Id.* Regardless of the conflicts that Mr. Simone may or may not have had, Mr. Iannarella was not in a position to waive them because he was not Mr. Simone's client. *Id.* Therefore, the question of whether or not Mr. Iannarella waived his conflicts with Mr. Simone at trial is moot.

## 3. Government's Nondisclosure

■ Mr. Iannarella also argues that we must grant him a new trial because the government "had an obligation to reveal the nature and extent of Mr. Simone's conflicts beyond what it did reveal." *Motion* at 5. Mr. Iannarella does not say that he needed the evidence, if it in fact existed, because it exculpated him or because he needed to impeach Mr. Simone or another witness. Indeed, Mr. Simone's alleged criminal conduct is not *Brady* or *Jencks* material. Rather, Mr. Iannarella argues that he should have been given the material only because it would have put him in a better position to intelligently and knowingly waive any conflicts he might have with Mr. Simone. *Petition* at 16–24.

Petitioner, however, has not been able to present us with any caselaw, nor can we find any ourselves, suggesting that the govern-

ment had an on-going obligation to disclose all information regarding Mr. Simone's criminality to even his client, Mr. Scarfo, let alone to a person outside the attorney-client privilege like Mr. Iannarella. As discussed above, the fact that Mr. Simone was not Mr. Iannarella's attorney, and therefore enjoyed no attorney-client relationship with him, makes the question of waiver of conflicts moot. This evidence could not possibly have impacted his "waiver" of Mr. Simone's conflicts, because Mr. Iannarella was not entitled to waive them. As a result, Mr. Iannarella was simply not entitled to the evidence for the purposes he suggests. Without such an entitlement or right to review this evidence, the government cannot be faulted for failing to provide it.

Mr. Iannarella does not contest that he had full disclosure of the government's evidence regarding Mr. Simone's involvement in the Rouse extortion, his presence at a meeting discussing the murder of Judge Hefland, and his presence in pictures with various defendants. We therefore do not find Mr. Iannarella's argument that disclosure of Mr. Simone's additional criminal activity would have changed his decision to allow Mr. Simone to serve as lead attorney to be credible. Petitioner's argument that we must order a new trial because the government failed to disclose Mr. Simone's conflicts would fail—even if it were not procedurally barred.

### III. CONCLUSION

A thorough review of the record in this matter directs the conclusion that Mr. Iannarella is not entitled to relief. Mr. Iannarella was properly given consecutive sentences for RICO and RICO Conspiracy. This court did not consider Mr. Iannarella's state murder conviction when we levied our sentence, so Mr. Iannarella is not entitled to resentencing based on his subsequent acquittal. Finally, Mr. Iannarella's joint defense arguments are procedurally barred. And, even if we were to consider these arguments, they must fail. Since Mr. Iannarella was not represented by Mr. Simone at trial, he was not entitled to waive any conflicts that he might have had with Mr. Scarfo's attorney. Furthermore, the government was not required to provide Mr. Iannarella information about these alleged conflicts.

For the above stated reasons, we will deny Mr. Iannarella's motion for relief pursuant to 28 U.S.C. § 2255.