UNITED STATES of America

v.

Nicodemo SCARFO.

Civil No. 97–2780.
Criminal No. 88–00003–1.

United States District Court,
E.D. Pennsylvania.

Oct. 14, 1997.

David E. Fritchey, Asst. U.S. Atty., Philadelphia, PA, for U.S.

Norris P. Gelman, Philadelphia, PA, for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

We have before us Defendant's Application for a Certificate of Appealability. On November 19, 1988 Nicodemo Scarfo, the former boss of the Philadelphia La Cosa Nostra Family, was convicted by a jury in a major mafia trial of RICO and RICO Conspiracy, Illegal Gambling Business, and two counts of Unlawful Distribution of Methamphetamine, 18 U.S.C. §§ 1962(c) and (d), 1963, 1955, and 841. The jury specifically found him guilty of thirty-two RICO predicate acts including eight murders, four attempted murders, two distributions of methamphetamine, one extortionate collection of credit, fourteen extortions, one Hobbs Act extortion and one illegal sports bookmaking operation. Post verdict motions were denied, *United States v. Scarfo*, 711 F.Supp. 1315 (E.D.Pa.1989), and Mr. Scarfo was sentenced to a 55-year term of imprisonment on May 11, 1989. Mr. Scarfo appealed his conviction. It was affirmed by the Third Circuit and his petition for certiorari was denied. *United States v. Pungitore*, 910 F.2d 1084 (3d Cir.1990), *cert. denied*, 500 U.S. 915, 111 S.Ct. 2009, 2010, 114 L.Ed.2d 98 (1991).

On April 22, 1997, Mr. Scarfo filed a petition for relief under 28 U.S.C. § 2255. He made three claims: (1) that the consecutive sentences that he received for RICO and RICO Conspiracy violated the Fifth Amendment's prohibition against double jeopardy; (2) that his sentence was based upon his conviction in an earlier state case in which he was later given a new trial and acquitted; and (3) that his trial lawyer, Mr. Robert Simone, provided ineffective assistance of counsel because he was burdened by conflicts of interest that were either unwaivable, or insufficiently waived. We issued an Opinion and Order dismissing these claims and deny-

ing the former mob boss's petition on July 9, 1997. *See United States v. Scarfo,* 970 F.Supp. 426 (E.D.Pa.1997).

Mr. Scarfo now applies to this court asking us to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b), so that he may appeal our denial of his habeas corpus petition to the Third Circuit. Mr. Scarfo argues that two of the issues raised in his § 2255 motion, his alleged conflicts with attorney Simone and his consecutive sentences for RICO and RICO Conspiracy, are "substantial 'and debatable among jurists,'" and thus must be heard on appeal. *Appellant's Memorandum in Support of His Application for a Certificate of Appealability ("Appellant's Memorandum")* at 1. We disagree and will deny the Applicant's motion and refuse to issue a certificate of appealability since Mr. Scarfo fails to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2).

## II. DISCUSSION

### A. Standard for Issuing a Certificate of Appealability

■ Though the language of 28 U.S.C. § 2253(c) is less than clear, the Third Circuit has determined that Congress intended to give district courts the power to grant certificates of appealability. *United States v. Eyer,* 113 F.3d 470, 473 (3d Cir.1997). Mr. Scarfo has followed proper procedure by applying to this court for such a certificate.

The Applicant, however, misstates the standard for when a certificate of appealability may issue. A certificate should not issue, as the Applicant suggests, when the issues raised through habeas corpus are "substantial and 'debatable among jurists.'" *Appellant's Memorandum* at 1. Instead, this court may only issue a certificate of appealability if Mr. Scarfo's habeas corpus petition makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Eyer,* 113 F.3d at 474; *United States v. Robinson,* 1997 WL 438829, *1 (E.D.Pa. July 23, 1997). It is our job to determine whether Mr. Scarfo's arguments regarding his alleged conflicts of interest

with his trial attorney and his consecutive sentences for RICO and RICO Conspiracy make a substantial showing of a denial of a constitutional right. We find that they do not.

### B. Conflict of Interest Arguments

On September 9, 1988, during a motions hearing, the government told the court that Mr. Simone was alleged by the two cooperating defendants to have participated in the extortion of Mr. William Rouse. This extortion, which involved several other of the defendants, was included in the indictment, and testimony was expected from the cooperating witnesses which implicated Mr. Simone. The prosecution further stated that a number of the photographs expected to be introduced by the government included Mr. Simone with the defendants, and that a cooperating witness was expected to testify regarding Mr. Simone's presence during a conversation about one of the predicate act murders. Tr. 9/9/88 at 46–47. Mr. Scarfo argues that his attorney's involvement in the Rouse extortion, appearance in surveillance photographs, and presence at the murder discussion created a conflict of interest.

Mr. Scarfo raised two conflict of interest arguments in his habeas corpus motion and he raises them for a second time in the instant Application. Mr. Scarfo asserts (1) that any conflicts that he had with his attorney, Mr. Simone, were unwaivable, and (2) that even if his conflicts were waivable, Applicant did not make a knowing and intelligent waiver. *Appellant's Memorandum* at 2–3. We disagree and will discuss each of these arguments in turn.

#### 1. Mr. Scarfo's Conflicts with Attorney Simone were Waivable

■ In his failed § 2255 motion, Mr. Scarfo argued that his trial lawyer provided ineffective assistance of counsel because Mr. Simone had an unwaivable conflict of interest with Mr. Scarfo. *See Scarfo,* 970 F.Supp. at 431–32. We rejected Mr. Scarfo's argument that his trial attorney's arguments were unwaivable *per se,* adhering to the Third Circuit's precedent in *United States v. Moscony,* 927 F.2d 742, 749–50 (3d Cir.), *cert. denied,*

501 U.S. 1211, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991)(holding that a district court may permit the waiver of conflict-free counsel when a conflict has been made known to the client), and *Pungitore,* 910 F.2d at 1143 (holding, on the direct appeal of Mr. Scarfo's conviction, that the district court may permit an attorney-client conflict to be waived knowingly and intelligently so as to safeguard the defendant's rights). *Scarfo,* 970 F.Supp. at 432. Following the Supreme Court's decision in *Cuyler v. Sullivan,* 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980), and the Third Circuit's opinion in *Pungitore,* 910 F.2d at 1141, we considered whether Mr. Simone had an actual conflict of interest with his client that prejudiced Mr. Scarfo's case. *Scarfo,* 970 F.Supp. at 431. After considering Mr. Simone's conduct throughout the entire trial, we found that "Mr. Simone was not actively representing conflicting interests; indeed, he was determined that his interests were subsumed to those of his client." *Id.* at 431–32. We further found that Mr. Scarfo had "presented no evidence, absent his conviction, that his attorney's performance was adversely affected by this conflict, or that they held divergent interests." *Id.* at 432.

Applicant now tries to skirt around our denial of his habeas petition, as well as the case law of the Supreme Court and Third Circuit, by arguing, for the first time, that the Third Circuit should reconsider its opinion in *Pungitore* in light of the Second Circuit's decision in *United States v. Fulton,* 5 F.3d 605 (2d Cir.1993). Mr. Scarfo argues that the Second Circuit, in *Fulton,* "has unequivocally held that where trial counsel is alleged to have participated in the crime charged with his client there is an actual conflict of interest that cannot be waived, and adheres to a per se rule of reversal." *Appellant's Memorandum* at 4.

Mr. Scarfo, however, fails to make a "substantial showing of the denial of a constitutional right," that is necessary to certify his appeal. 28 U.S.C. § 2253(c)(2); *see also Eyer,* 113 F.3d at 474. With regard to conflict of interest issues, the Third Circuit has followed and continues to follow the standard enunciated by the Supreme Court in *Cuyler,* which requires Mr. Scarfo to show both that an actual conflict existed between him and his trial counsel and that the conflict actually prejudiced Mr. Scarfo's case. *Fulton's per se* rule is not constitutionally mandated, is contrary to Supreme Court precedent, and is not now and has never been the law of the Third Circuit.

In *Cuyler* the Supreme Court established the standard for reversible error in cases involving an attorney's conflict of interest to be actual conflict and adverse effect. 446 U.S. at 350, 100 S.Ct. at 1719. The Third Circuit adopted this standard in *Government of the Virgin Islands v. Zepp,* 748 F.2d 125 (3d Cir.1984). The Supreme Court reaffirmed the concept that disqualification of a defendant's counsel for conflict of interest reasons is permissive, and not mandatory, in *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). In *Wheat,* the High Court held that "where a court justifiably finds an actual conflict of interests [between client and attorney], there can be know doubt that it *may* decline a proffer of waiver ... [T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest[.]" *Id.* at 162–63, 108 S.Ct. at 1698–99 (emphasis added). The Supreme Court's use of the word "may" illustrates that while a defendant's Sixth Amendment right to counsel of choice is not absolute, a district court's authority to disqualify conflict-ridden counsel is permissive, not mandatory. Since *Wheat,* the Third Circuit has once again affirmed the conflict of interest standard set in *Cuyler* and *Zepp* on the direct appeal of Mr. Scarfo's case. *See Pungitore,* 910 F.2d at 1141.

The Second Circuit's holding in *Fulton,* which requires reversal upon the showing of an actual conflict of interest, without any adverse effect requirement, is at odds with the standard enunciated by the Supreme Court in *Cuyler* and followed by this circuit. Applicant has not made a substantial showing that his constitutional rights have been violated by citing to a case from a foreign circuit that is at odds with the conflict of interest doctrine established by the Supreme Court and followed by the Third Circuit for the past thirteen years.

Furthermore, even if *Fulton* were the law of the Third Circuit, it is easily distinguished from Mr. Scarfo's case. Mr. Scarfo was informed of Mr. Simone's possible conflicts in the government's motion, before trial, to disqualify Mr. Simone. And, as we have previously discussed, Mr. Scarfo insisted on keeping Mr. Simone as his lawyer. *See Scarfo*, 970 F.Supp. at 432–35. Indeed, the Court of Appeals has already held on direct appeal that any error in Mr. Scarfo's case was invited. *Pungitore*, 910 F.2d at 1143 n. 84.

In *Fulton*, on the other hand, there was no invited error. The issue of the defense attorney's conflict only came to light in the middle of trial, taking the trial court and the defendant by surprise. The trial court conducted a colloquy with Fulton in an effort to bring the allegations of his counsel's criminality to his attention. While Fulton expressed a desire to continue with his chosen counsel, he, unlike Mr. Scarfo, did not aggressively demand to be represented by his attorney as his Sixth Amendment right in the face of a motion to disqualify. Thus, defendant Fulton did not invite error, and the Second Circuit had no reason to discuss the possible application of the invited error doctrine to that case. However at least one court in the Second Circuit has stated that the invited error doctrine trumps *Fulton's per se* rule that otherwise applies in that circuit. *See United States v. Gehl*, 852 F.Supp. 1135, 1145–46 n. 14 (N.D.N.Y.1994). In *Gehl*, the district court accepted the defendants' waivers of their attorneys' conflicts. The court forewarned the defendants, citing the law of the Third Circuit,

> that 'it would be a rare case in which a defendant, after convincing the trial court not to disqualify his attorney of choice, should be able to obtain a reversal of his conviction on the basis of a conflict of interests.' *See United States v. Pungitore*, 910 F.2d 1084, 1143 n. 84 (3rd Cir.1990), *cert. denied*, 500 U.S. 915, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991); *see also United States v. Moscony*, 927 F.2d 742, 749 n. 10 (3rd Cir.), *cert. denied*, 501 U.S. 1211, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991) (citation omitted)('This is certainly not to imply that if the district court accepts the waiver the defendant may later successfully complain

about a conflict of interest.'). Thus, defendants' waivers here may well be at a high price in terms of future appeals, if any.

*Gehl*, 852 F.Supp. at 1145–46.

Therefore, even if the *Fulton* rule applied to Mr. Scarfo's case, it would not help the Applicant to make a substantial showing of a violation of his constitutional rights. Yet, in any case, since *Fulton* is not the law of the Third Circuit and is at odds with the Supreme Court's conflict of interest precedent, we refuse to certify Mr. Scarfo's appeal so that he may ask the Third Circuit to overrule *Pungitore* and hold that an actual conflict of interest, absent any showing of prejudice, requires reversal, *per se.*

**2. Mr. Scarfo Knowingly and Intelligently Waived Any Conflicts with His Attorney**

Applicant next claims that even if Mr. Simone's conflicts were waivable, Mr. Scarfo did not knowingly and intelligently waive any alleged conflicts with his attorney. Mr. Scarfo asserts that: (1) the court's colloquy was legally insufficient to allow the Applicant to make a knowing and intelligent waiver, (2) the colloquy did not reveal the full nature and extent of Mr. Simone's alleged conflicts, and (3) the court's charge to the jury regarding accomplice testimony prejudiced Mr. Scarfo's case so severely that a new trial is necessary.

While Mr. Scarfo did argue in his § 2255 motion that he did not knowingly and intelligently waive his right to conflict-free counsel, he never once raised any of these three issues. The Court of Appeals has repeatedly emphasized that " 'absent exceptional circumstances, an issue not raised in the district court will not be heard on appeal.' " *Altman v. Altman*, 653 F.2d 755, 758 (3d Cir.1981), *quoting Franki Foundation Co. v. Alger-Rau & Associates, Inc.*, 513 F.2d 581, 586 (3d Cir.1975). Exceptional circumstances, such as that the public interest requires the issue to be heard, or that a manifest injustice would result from not hearing the new issue, *see id.*, do not exist in the instant case. Therefore, the Court of Appeals should not even consider the Applicant's three new ar-

guments. However, even if these arguments were open to consideration, they are frivolous and would fail on the merits.

### a. Insufficient Colloquy

■ We agree with defense counsel that in order to make a knowing and intelligent waiver, "the accused must know what he is doing so that 'his choice is made with eyes open.'" *Appellant's Memorandum* at 13, *quoting Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241–42, 87 L.Ed. 268 (1942). We have found and continue to find, however, that Mr. Scarfo's eyes were wide open when he decided to keep Robert Simone as his lawyer in this matter.

Applicant argues that he is entitled to a new trial because the court's colloquy was insufficient in that it: (1) failed to give Mr. Scarfo enough time to consider whether to retain a new lawyer,(2) failed to tell Mr. Scarfo that he could consult with another lawyer regarding Mr. Simone's conflicts, and (3) failed to inform Mr. Scarfo that he would be entitled to a continuance if he desired new counsel. Applicant, however, cites no Third Circuit case holding that a conviction must be reversed when these three points are not present in a conflicts colloquy. Instead, Mr. Scarfo relies upon a Second Circuit opinion that reversed the district court, not for allowing the defendants' representation by conflict-ridden counsel, but for disqualifying the defendants' counsel of choice. *See United States v. Curcio*, 680 F.2d 881 (2d Cir.1982).

In *Curcio*, two brothers wished to retain the same lawyer at a criminal trial where they were being charged as co-defendants. The government moved to remove the brothers' attorney, which the district court did after holding that neither defendant had made a knowing and intelligent waiver of their right to be represented by conflict free counsel. *Id.* at 882–84. The Second Circuit reversed, stating that they "[saw] no reason why either [defendant] could not make a knowing and intelligent election to be represented by [their attorney] despite the existence of a conflict of interest." *Id.* at 885.

After deciding that the defendants had a right to waive any conflicts they might have with their attorney, the Second Circuit then discussed what it means to effectuate a knowing and intelligent waiver. The court found that whether a defendant has made a knowing and intelligent waiver "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, expertise, and conduct of the accused.'" *Id.* at 888, *quoting Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981)(internal quotation omitted). The court stated that "the first task of the trial court is to alert the defendants to the substance of the dangers of representation by an attorney having divided loyalties in as much detail as the court's experience and its knowledge of the case will permit." *Id.* If a defendant "persists in his request for joint representation, the court must assess whether the request is ... knowing and intelligent." *Id.* This does not mean that a defendant's decision must be "what an objective observer would deem sensible, prudent, or wise," since the "Supreme Court 'consistently has rejected any paternalistic rule protecting a defendant from his intelligent and voluntary decisions about his own criminal case.'" *Id., quoting Edwards*, 451 U.S. at 490–91, 101 S.Ct. at 1888 (Powell, J. concurring)(internal quotation omitted). Thus,

> [i]f the defendant reveals that he is aware of and understands the various risks and pitfalls, and that he has the rational capacity to make a decision on the basis of this information, and if he states clearly and unequivocally ... that he nevertheless chooses to hazard those dangers, we would regard his waiver as knowing and intelligent and allow his choice to be honored out of "that respect for the individual which is the lifeblood of the law."

*Id.* at 888–89, *quoting Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)(internal quotation omitted).

The Second Circuit noted that "[i]n assessing the level of each defendant's comprehension of the dangers, the court may perhaps devise a variety of methods for gaining the necessary insights." *Id.* at 889. The court suggested using questions designed to elicit narrative answers, allowing the defendant to

have a reasonable amount of time to "digest and contemplate the risk posed," and encouraging the defendant to confer with his chosen counsel and to seek advice from independent counsel. *Id.* at 889–90. On remand, the appellate court *suggested* that the district court follow the prescribed catechism with respect to the defendants' desire to be represented by the same counsel. *Id.* at 890.[1] Yet, Mr. Scarfo argues that we must grant him a new trial because this court did not follow *Curcio's* "prescribed catechism."

We reject this argument for two reasons. First of all, *Curcio* is not the law of the Third Circuit. In fact, in the fifteen years since it was decided, it has not been cited once by any court in this circuit. Second, even if this case were controlling in this jurisdiction, it would not mandate the result that the former mob boss suggests.

The catchesim that the Second Circuit describes is advisory, not mandatory: "[O]n remand ... we *suggest* that the district court conduct the prescribed catechism[.]" *Id.* (emphasis added). Indeed, later cases emphasize that whether a defendant's waiver is knowing and intelligent "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, expertise, and conduct of the accused.'" *Id.* at 888, *quoting Edwards,* 451 U.S. at 482, 101 S.Ct. at 1884 (internal quotation omitted).

In *United States v. Friedman,* 854 F.2d 535 (2d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989), the defendant, a former attorney, claimed on appeal that his lawyer was ineffective because of a serious conflict of interest, despite the fact that he, like Mr. Scarfo, "vigorously opposed the government's" motion to disqualify his attorney. *Id.* at 572. The defendant argued that he did not "validly waive any conflict of interest," since "his waiver did not meet the standards set forth by ... Curcio[.]" *Id.* at 573. The district court rejected this argument. *Friedman* recognized that though *Curcio* prescribed a catchesim, courts should look to the particular circumstances of a case when deciding

whether or not a defendant knowingly and intelligently waived his conflicts. The court decided that since the defendant was himself a lawyer, who had sufficient time to consider his attorney's conflicts and had been alerted to the dangers of representation by a conflict-ridden attorney, the departures from *Curcio* were justified.

Though Mr. Scarfo is not himself an attorney, a departure from *Curcio* would certainly have been warranted, when taking into account the "particular facts and circumstances surrounding that case, including the background, expertise, and conduct of the accused.'" *Curcio* at 888, *quoting Edwards,* 451 U.S. at 482, 101 S.Ct. at 1883–84 (internal quotation omitted). In addition to the extensive colloquy concerning conflicts conducted by the court, Mr. Scarfo's background and experience with both Mr. Simone and the criminal justice system convince us that the Applicant knowingly and intelligently waived any conflicts of interest with his attorney.

Mr. Scarfo insisted that he be represented by Mr. Simone in the instant case. This was certainly no surprise considering that Mr. Simone had represented Mr. Scarfo in numerous other proceedings. Mr. Simone represented Mr. Scarfo in *United States v. Scarfo,* E.D. Pa. Criminal Number 86–453, before Chief Judge Fullam, where Mr. Scarfo was convicted of the extortion of William Rouse. Mr. Simone also represented Scarfo in *United States v. Scarfo,* E.D. Pa. Criminal Number 87–258, where the Applicant was acquitted of various drug trafficking charges. Mr. Simone further represented Mr. Scarfo in *Commonwealth of Pennsylvania v. Scarfo, et. al.,* where the Applicant was acquitted of the execution of Salvatore Testa in May of 1988. Attorney Simone also represented Scarfo in *State of New Jersey v. Scarfo, et. al.,* a state RICO prosecution indicted in 1987 that proceeded at roughly the same time as the federal RICO prosecution at issue in this case.

In the case before Chief Judge Fullam, the government raised the specter of Mr. Si-

---

**1.** We did not find anything in *Curcio* that would require a court to inform the defendant that he is

entitled to a continuance if he decides to hire new counsel, as the Applicant would suggest.

mone's involvement in the Rouse extortion (the subject of that case) with the defendant and the court. When Mr. Scarfo learned that the government was trying to disqualify his attorney, Mr. Scarfo wrote an impassioned letter to the court urging that Mr. Simone be allowed to proceed as his attorney. Mr. Scarfo told the court that:

> I am writing to you to let you know I was dissapointed [sic] in my attorney at my bail hearing. Oscar Gaskins is a good lawyer. But he wasn't prepared properly.... I do not want him as my lawyer. I would like Robert Simone. I think it is unfair for me not to have the lawyer of my choice. The Government is very unfair. They keep trying to involve Mr. Simone in wrong doing in this case, and in the past. He has been admitted in my Rico [sic] case in New Jersey. He has represented me before. I have all the complete confidence in him. I know he will be fully prepared on my behalf. If Mr. Simone was a surgeon, and I needed a life or death operation. I would make Mr. Simone operate on me [sic]. He also is familiar with the case and the case in New Jersey. Which the Govt. and New Jersey have the same witnesses [sic]. Mr. Simones [sic] fee is also not a problem for me to raise. I would like to point out to you, that at the end of my first bail hearing in front of Magistrate Judge Mathans, both he and Ron Cole agreed that Mr. Simone represented me completely, and effectively. It is not fair for me to be deprived of the lawyer of my choice. Just because the informants lie about him, as well as me [sic]. Mr. Simone has stated to me that as a result of what he heard and read about this case that he could and would represent me. I thank you for considering this request. I am willing to waive my right to have a lawyer other than Mr. Simone, and I waive my right to have him as my witness. I believe he will be more important in my case as my lawyer. Please answer this letter as soon as possible.
> Respectfully Yours
> Nicodemo Scarfo.

Letter from Mr. Scarfo to Chief Judge Fullam, Filed 2/20/87.

Approximately one week after receiving this letter, Chief Judge Fullam held a hearing where he considered whether or not to disqualify Mr. Simone as Mr. Scarfo's attorney. At the hearing the government argued that Mr. Simone was an unindicted co-conspirator in that case and should therefore be disqualified. Tr. 2/26/87 at 5. Chief Judge Fullam fully questioned Mr. Scarfo about his desire to have Mr. Simone represent him despite Mr. Simone's alleged involvement in the Rouse extortion:

> Q. Okay, now you understand in this indictment that you are charged with various criminal offenses, do you not?
> A. Yes, Your Honor.
> Q. And you understand that the Government charges and will have witnesses who will testify to the effect that Mr. Simone was also involved in the alleged crime. Do you understand that?
> A. Yes, yes.
> Q. Now, do you understand that regardless of whether those charges against Mr. Simone are true or false that establishes Mr. Simone has personal knowledge about the crimes which would be on trial? Do you understand that?
> A. Yes, Your Honor.
> Q. And that, therefore, he would be in a position where his testimony might be helpful to one side or the other. For example, it would be helpful to you in the defense of your case to have Mr. Simone available to testify that what the Government witnesses say is not true. Do you understand that?
> A. Yes, Your Honor.
> Q. Do you also understand that if Mr. Simone should be permitted to act as your lawyer in the trial of the case that he would not be able to testify for you or against you or in any other way?
> A. Yes, Your Honor.
> Q. Do you also understand that his ability to cross-examine the government might very well be curtailed. And he might be less able to do an effective job of cross-examination of witnesses because of his personal involvement. Do you understand that?

A. Yes, Your Honor. I understand, Your Honor.

Q. That if you were represented by a lawyer who did not have that personal involvement or other conflicts of interest that you would be able to conduct your own defense purely in your own interest, not in Mr. Simone's interest, not in other defendants' interest but purely in your own interest. Do you understand that?

A. Yes, yes, Your Honor.

Q. You also understand that if you agree to have Mr. Simone act as your lawyer that you would be giving up once and for all your right to question the fairness of your trial on the grounds of Mr. Simone's conflicts of interest?

A. I understand that, yes, Your Honor.

Q. That you would not be able to challenge the adequacy of his representation on that ground. Do you understand that?

A. I do understand that.

Q. You couldn't come along if you get convicted—you couldn't come along later on and say: "Mr. Simone should not have been permitted to represent me. He did a lousy job. He was in a conflict situation and shouldn't have been permitted." Do you understand all that?

A. I do understand all that, Your Honor.

Q. You also must understand, and I want to make sure that you do, that there may very well be other factors that I am not aware of that would make Mr. Simone less capable to act as your lawyer than somebody who did not have his conflict of interest would be. Do you understand that?

A. Yes, I understand.

Q. I can't foresee all of the possibilities. There may be a lot of other impairments I am not aware of. There may be a lot of disadvantages to having Mr. Simone act as your lawyer. Do you understand that?

A. I understand that.

Q. Are you willing to give up all those disadvantages?

A. I am willing to give them all up, Your Honor.

Q. Is it your desire to have Mr. Simone represent you?

A. Yes, it is, Your Honor.

Q. Why is that?

A. Well, I have complete confidence in Mr. Simone; and I know that he could do a good job and also understand the case and he has represented me before. He understands a lot of the facts.

Q. Now, have you directly or indirectly communicated to the other defendants a desire that they waive their rights . . . to allow Mr. Simone to represent you?

A. No, Your Honor, not directly.

Q. Indirectly?

A. Yes.

THE COURT: Thank you. Any questions?

MR. COLE: Your Honor, I think he should be advised that Mr. Simone could be a witness for the Government.

\* \* \* \*

BY THE COURT:

Q. You are also aware, are you not, Mr. Scarfo, that at least theoretically the Government would have a right to call Mr. Simone as a witness?

A. Yes I do, Your Honor.

THE COURT: Thank you.

DEFENDANT SCARFO: Thank you.

Tr. 2/26/87 at 29–33.

Based on the above colloquy, Chief Judge Fullam agreed to allow Mr. Simone to represent Mr. Scarfo in the Rouse extortion case. However, he conditioned this representation based on Mr. Simone not cross-examining witnesses who have mentioned his involvement in criminal activity and on Mr. Simone obtaining co-counsel to cover those areas that Mr. Simone was not permitted to explore. Tr. 4/14/87 at 9–14. Chief Judge Fullam then colloquied Mr. Scarfo right before the start of jury selection to make sure that Mr. Scarfo understood what he was getting himself into:

Q. Mr. Scarfo, is it still your desire to have Mr. Simone participate in representing you in this case?

A. Yes, Your Honor.

* * * *

Q. You also understand that Mr. Simone, according to the Government witness, was a participant in some of the alleged illegal activity that is the subject of this case and other cases? You understand what [it is] they say?

A. Yes, Your Honor.

Q. And that whenever when an attorney is accused by the Government or the Government witnesses of participating in a crime, that would naturally give rise to some pressure on the part of the attorney to cooperate with the Government so as to avoid being indicted and prosecuted himself. Do you understand that?

A. I understand that, Your Honor.

Q. So that conceivably there could be a conflict between Mr. Simone's personal interests and his looking out for your interests. Do you understand that?

A. I understand that, Your Honor.

Q. You also understand that you have an absolute right to be represented by a lawyer who does not have any of these kinds of conflicts of interest. Do you understand that?

A. I understand that, Your Honor.

Q. Do you also understand that if you insist upon Mr. Simone representing you in this case you would not be able after the trial—no matter what the outcome—you would not be able to complain that you were not represented adequately by counsel. Do you understand that?

A. I understand that, Your Honor.

Q. Now is it your desire—not withstanding all of these problems, and there may be other problems that I am not aware of that could impede his ability to represent you—but is it your intention, your desire, that Mr. Simone continue to represent you in this case?

A. It is my desire, Your Honor.

Q. You understand that—depending on what happens during the course of the trial, depending on what witnesses say and what kind of cross-examination takes place—the jury may actually directly ask a question as to whether Mr. Simone could have been called as a witness in this case and it may be my obligation to instruct the jury that, yes, he could have testified; and the jury may very well draw adverse inferences from the fact that he does not testify on your behalf. Do you understand that?

A. I understand that, Your Honor.

Q. And frankly, just as a general proposition, I will state when I was a lawyer I used to represent a lot of criminals, or people accused of criminal activity, not as many as Mr. Simone, and speaking from my experience as a defense lawyer in criminal cases I would strongly urge you against continuing to have Mr. Simone represent you in this case simply to avoid all these problems. But obviously, it is your decision and not mine.

A. It is my desire to have Mr. Simone, Your Honor.

Q. Okay. And you waive the Constitutional right to effective assistance of counsel to the extent of Mr. Simone's participation in this case?

A. Yes, I do.

THE COURT: Okay. I will permit the waiver and will deny the Government's Motion for Reconsideration. One further thing.... You have had an opportunity to discuss this matter with counsel other than Mr. Simone, have you not? (Pause.) That is to say—

A. Mr. Feinstein.

* * * *

THE COURT: I must say, Mr. Simone, that the basis of my ruling in this case—and I want to see if you concur in it—I have the distinct impression that Mr. Scarfo may very well be somewhat in charge of whom you represent and whether you represent him or someone else; and that in the event of any conflict Mr. Scarfo would have seen to it that you would not be adversely affecting his interests. Is that a valid—

MR. SIMON[E]: I am sorry, Your Honor?

THE COURT: I have the impression that Mr. Scarfo may very well be the one who is pulling the strings so to speak in deciding who is going to represent him.

MR. SIMONE: Mr. Scarfo does not pull any strings with regard to me, Your Honor. He does not tell me, nor would I listen if he did, who to represent and who to not represent.

THE COURT: But are you satisfied that you can participate in this trial and represent Mr. Scarfo without adversely affecting his interests by reason of your conflicting interests?

MR. SIMONE: I feel that I can, and I also feel that I can follow your earlier order regarding the limitations that you placed upon me.

Tr. 4/27/87 at 3–8.

In addition to Mr. Scarfo's waiver of conflicts in the Rouse extortion case before Chief Judge Fullam, the issue of possible conflicts and Mr. Scarfo's waiver of them appeared repeatedly early in the RICO case before this court. *See Scarfo,* 970 F.Supp. at 432–33. At the September 8, 1988 pre-trial motions hearing, a number of conflict issues were discussed. First, Mr. Simone spoke in detail about his business relationship with another attorney on the case, and stated that they were not associated in any way that would adversely affect either of their clients. This was done in front of those clients, and then the following occurred:

THE COURT: And, you don't foresee anything arising in this trial in which the interest[s] of your client would be adverse to those of Mr. Capone?

MR. SIMONE: No, sir.

THE COURT: Mr. Scarfo, I'll have to ask you if you agree with what your attorney has just said, sir?

MR. SCARFO: I agree with him.

THE COURT: You agree with it. All right.

Tr. 9/8/88 at 47–50.

Next, Mr. Simone testified about the extent to which he had represented a number of people connected with the case including Mr. Caramandi and Mr. DelGiorno. Subsequently, the following occurred:

THE COURT: Mr. Scarfo, having heard all of that, you want him [Mr. Simone] to be your lawyer nevertheless?

MR. SCARFO: Yes.

THE COURT: All right. Thank you, sir.

Tr. 9/8/89 at 57–58.

In addition, a few minutes later, Mr. Simone informed the court of various other possible conflicts that had been made known to all defendants. We asked, "is there any defendant that does not agree with what Mr. Scarfo has said? Any counsel that does not agree with it?" When the defendants remained silent or shook their heads 'no,' we said, "all right. Thank you." *Id.* at 60.

On September 9, 1988, it was explained to Mr. Scarfo that the government's witnesses, DelGiorno and Caramandi, would testify that Mr. Simone was involved in the Rouse extortion, just like they had testified that Mr. Simone was involved in the Rouse extortion in the trial before Chief Judge Fullam. Again, as we discussed in our opinion denying Applicant's § 2255 motion, the following exchange took place:

THE COURT: All right. Just one further thing, I think we have to bring Mr. Scarfo up and I think you have to tell him about this and he has to indicate whether or not it's a problem.

MR. SIMONE: All Right.

(pause.)

MR. SIMONE: If your Honor please, for the record—

THE COURT: Mr. Scarfo, how do you do, sir?

MR. SIMONE:—let me just say, Mr. Scarfo was represented by me from approximately 1980 on court matters and I gave him advice in connection with certain things in the seventies when he had problems before the New Jersey Senate investigating committee. So he knows me as a lawyer and I've also had dinner with him on many occasions and I've been in his company, which the photographs will show and I've been on a boat that he—we're friends as well as client-attorney.

Now Mr. Scarfo was the defendant in a case that's known as the Rouse extortion case and in that case I had represented Leland Beloff at one point, and also there were accusations made by two witnesses DelGiorno and Caramandi, mostly DelGior-

no—mostly Caramandi. There was a motion by the Government to disqualify me in that case for conflict of interest because I represented Beloff and also something to do with the Code of Professional Responsibility and also there was a question of whether I was going to be called as a witness for the Government or a witness for the defense. Mr. Scarfo at that point waived his right to call me as a witness. The Government never did call me as a witness and they indicated that they weren't going to.

The bottom line was that Judge Fullam, after giving it a great deal of thought, I must say, because it took awhile after the hearing, he handed them an order, an opinion order which stated that Mr. Scarfo was entitled to be represented by counsel of choice and under the Eighth Amendment.

However, he limited my role in the case and I had to bring in co-counsel that was Miles Feinstein. I must say that I was not permitted to cross-examine DelGiorno or Caramandi in that case or to make any reference to their credibility. During the trial, Mr. Miles Feinstein cross-examined Caramandi and DelGiorno did what they expected—

THE COURT: Please can we have it quiet.

MR. SIMONE: The record will reflect that Mr. Feinstein did what I was expected to do and that was to try and defend me and to be honest with you, it hurt Mr. Scarfo. I would not have tried to defend myself nor would I have put my credibility in (coughing) as to their credibility. Mr Scarfo was convicted in that case.

In subsequent cases, I've been permitted to participate fully as Mr. Scarfo's lawyer before Judge O'Neill, before Judge Sabo, in a homicide case and I also represented Mr. Staino in a case before Judge O'Neill.

Now in the cases I represented Mr. Scarfo, whenever DelGiorno and Caramandi, in front of a jury that is, there have been hearings, whenever DelGiorno and Caramandi have mentioned my name, I just skirt around it. I mean, I just ignored it and I think other counsel that were

participants in the trial noticed that. I ignore it. What I'm saying is, Mr. Scarfo is hearing everything that I'm saying. You understand that there's a problem that these men are saying certain things about me as well as about other lawyers and the Judge may have to admonish me if I step out of line. Mr. Pichini and the other prosecutors may have to, in the performance of their duties object to certain things that I might do that I don't think, but I don't know that is wrong until the Judge agrees they're wrong, then that could have some, you know, bearing and effect on your case. Are you willing to continue on?

MR. SCARFO: I think they say anything about you. You're my lawyer and that's it.

MR. SIMONE: Okay.

THE COURT: Mr. Scarfo one other thing and I'm not saying he's going to do this, but there's a natural human tendency sometimes if someone is charged with a crime that he might try to save his own skin, so to speak, if you understand, he might not want things to come out concerning him to your detriment. You understand that?

MR. SCARFO: Yes, sir.

THE COURT: Now, I'm not saying that's going to happen in this case but it's a normal human tendency that some people have. Knowing that you still want Mr. Simone to be your lawyer?

MR. SCARFO: I still want Mr. Simone—yes, sir.

THE COURT: You're sure?

MR. SCARFO: Yes, sir.

THE COURT: Okay, fine

MR. SCARFO: Thank you, your honor.

MR. SIMONE: Thank you, your honor.

THE COURT: Can anybody—just one other thing. Can you think of anything else we should—

MR. SIMONE: The pictures, let me see. Mr. Gordon mentioned that there's going to be pictures with me. When I've seen these pictures in other trials and I don't know how—I mean, what can I do that's going to be harmful to the Government with regard to these pictures. I don't

understand. What am I—you know, I don't—there's never been any problem with any.

MR. PICHINI: If you make any kind of comment during the course of the trial that you were there and there's nothing that went wrong or something—

MR. SIMONE: That's not—

THE COURT: No, no that's—

MR. SIMONE: That's absolutely a lie. I never did—

THE COURT: I'm precluding him from personally stating when he's questioning somebody on cross-examination. I'm precluding him from his closing argument from saying, look, you can take it from me, I was there—you understand that.

MR. SCARFO: That's all right, Judge.

THE COURT: And that causes you no problem, you still want him as [your] lawyer.

MR. SCARFO: Nope, I still want him as my lawyer.

THE COURT: Mr. Scarfo, thank you, sir.

MR. SCARFO: Thank you, your honor.

MR. PICHINI: Just one question. To what extent will Mr. Simone be able to cross-examine about the Rouse extortion since it is there, what do you anticipate with respect to the jury?

MR. SIMONE: I don't expect to go into a great deal of cross on it either. If you were to give up and have a little more confidence in me, I was just going to touch on it and I was going to pass it on to other lawyers because if there are certain things that have to come involving me, I don't want to be the one to do it. I know better, not to protect myself. I am more interested in my client.

THE COURT: Well, again, you know, admittedly it is possible to inject your own opinions in a very clever fashion without, you know, seeming to do it. If I see that happening, I'm going to stop it, okay?

MR. SIMONE: Your honor, I'll be on my toes more so. I'll be on my toes more so.

*See Scarfo,* 970 F.Supp. at 433–34, *quoting* Tr. 9/9/88 at 52–55.

Even before Mr. Scarfo entered our courtroom, he had learned about his attorney's possible conflict regarding the Rouse extortion. Mr. Scarfo wrote a letter to the Chief Judge asking him to keep Mr. Simone as his attorney in the Rouse extortion case. Mr. Scarfo went through at least two entire colloquies with Chief Judge Fullam regarding the waiver of any conflicts of interest with Mr. Simone. Mr. Simone twice indicated that he understood that when he waived his attorney's conflict of interest he could not "come along if [he got] convicted ... and say: 'Mr. Simone should not have been permitted to represent me. He did a lousy job. He was in a conflict situation and shouldn't have been permitted.'" Tr. 2/26/87 at 31. Mr. Scarfo sat through the entire Rouse extortion trial where the government's witnesses implicated his attorney, Robert Simone, in the Rouse extortion. All of this happened before the federal RICO trial that Mr. Scarfo seeks to appeal today. And, Mr. Scarfo participated in this court's colloquy regarding Mr. Simone's alleged conflicts of interest regarding the Rouse extortion and the surveillance photos in the instant case. Thus, even if *Curcio* were the law of this circuit, we would find that Mr. Scarfo's waiver of Mr. Simone's alleged conflicts was knowing and intelligent in light of "'the particular facts and circumstances surrounding that case, including the background, expertise, and conduct of the accused.'" *Curcio,* 680 F.2d at 888, *quoting Edwards,* 451 U.S. at 482, 101 S.Ct. at 1884 (internal quotation omitted). These facts and circumstances include: (1) Mr. Scarfo's waiver of Mr. Simone's conflicts after the extensive colloquy provided by this court, (2) Mr. Scarfo's waiver of his attorney's conflicts after the two extensive colloquies provided by Chief Judge Fullam regarding the same Rouse extortion conflict asserted in the instant case, (3) Mr. Scarfo's letter to Chief Judge Fullam begging that Mr. Simone remain on his case, despite any conflicts, and (4) Mr. Scarfo's prior experience having Mr. Simone as his lawyer in at least four prior cases. Furthermore, even if Mr. Scarfo's waiver were not knowing and intelligent, he still would not be entitled to any relief since the Applicant has presented no evidence that his attorney's conflicts prejudiced Mr. Scar-

fo's case, as required by *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719, and *Zepp*, 748 F.2d at 125. For these reasons, Applicant's argument that the court's conflicts colloquy was insufficient does not make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appeal is therefore not warranted on this basis.[2]

### b. Nature of Mr. Simone's Conflicts

 Applicant does not contest that the court's colloquy involved attorney Simone's possible conflicts that might result from the "allegations by two cooperating witnesses that [Mr. Simone] (1) participated in the Rouse extortion; (2) appear[ed] in a number of surveillance photographs expected to be used as government evidence; and (3) . . . was present during a conversation about one of the predicate act murders." *Appellant's Memorandum* at 14. However, Applicant argues that government witnesses also testified that Mr. Simone was involved in other murder plots which Mr. Scarfo had not been informed about. These included a plot to kill Mr. Caramandi and a plot to kill Mr. Rego. Although the Applicant does not say so explicitly, Mr. Scarfo appears to suggest that

the conflict of interest colloquy should have warned him of the possibility that something like this could happen. This argument has little merit. First of all, Mr. Caramandi later retracted his statement that Mr. Simone was going to kill him. Tr. 10/31/88 at 4–9. Second, it was explained to Mr. Scarfo that the government witnesses might make various accusations against Mr. Simone. The Applicant responded: "I think they say anything about you. You're my lawyer and that's it." Tr. 9/9/88 at 55. Thus, Mr. Scarfo knew that the government witnesses might make numerous and varied accusations Mr. Simone. Yet, he still wanted Mr. Simone to remain as his attorney. And, finally, even if this specific conflict should have been revealed to Mr. Scarfo explicitly, the Applicant is not entitled to a new trial since he has not shown that Mr. Simone's alleged conflict prejudiced his case, as required under *Cuyler* and *Zepp*.

### c. Accomplice Jury Instruction

 Mr. Scarfo next argues that his defense was impermissibly and irreparably prejudiced by the court's jury instruction

---

**2.** Mr. Scarfo argues that he had no time to consider the conflict situation since the government's motion was made "on the eve of trial." *Appellant's Memorandum* at 12. This is simply not true. As we have discussed, Mr. Scarfo knew of Mr. Simone's alleged participation in the Rouse extortion since before his first trial with Judge Fullam. Thus, Mr. Scarfo had approximately eight months following his federal RICO indictment to determine whether he wanted attorney Simone to represent him. Mr. Scarfo had no difficulty deciding that he wanted Mr. Simone to continue to represent him, despite his possible conflicts and notwithstanding the result in the Rouse extortion case before Chief Judge Fullam. Not only did Mr. Scarfo elect to have Simone represent him at trial in this case, but he also had the attorney represent him in the state prosecution of the Testa murder, a case where he faced the death penalty. He further chose to have Mr. Simone continue to represent him in the New Jersey state RICO case, and he also had Mr. Simone represent him in the CCE case in the Eastern District of Pennsylvania that resulted in another acquittal in December, 1987. Mr. Scarfo never asked for more time to consider whether or not he wanted Mr. Simone as his counsel, and there is no reason to believe that offering him additional time would have changed his implacable insistence on retaining Robert Simone as his counsel of choice.

Furthermore, so far as being told about a right to speak with another attorney, there is no serious factual question that Mr. Scarfo was aware of these possibilities. Chief Judge Fullam required the Applicant to obtain co-counsel and continued his case for this to be accomplished only a year before. Moreover, during the September 9, 1988 colloquy of Mr. Scarfo about his conflict with his attorney in this case, Mr. Simone recited the series of events regarding the limitation of his role in the case before Chief Judge Fullam and the bringing of co-counsel into the case with Mr. Scarfo standing beside him and listening. In response to this, Mr. Scarfo still insisted that Mr. Simone remain as his lawyer. Despite having received the benefit of representation by unconflicted co-counsel as well as Mr. Simone in the case before Chief Judge Fullam, Mr. Scarfo expressed no desire for unconflicted co-counsel in this case, preferring instead to be represented by Mr. Simone alone. As Mr. Simone stated during the September 9, 1988 hearing, he and Mr. Scarfo believed that the split counsel arrangement hurt rather than helped Mr. Scarfo. Tr. 9/9/88 at 54. In fact, Mr. Scarfo decided to go to trial with Mr. Simone as his sole counsel in every case after his trial before Chief Judge Fullam.

regarding accomplice testimony. We explained to the jury that prosecution witnesses Mr. DelGiorno and Mr. Caramandi had taken part in the commission of certain crimes with the defendants. We then instructed the jury that accomplice testimony should be considered with "great caution and weighed with great care." Tr. 11/17/88 at 23. Mr. Scarfo now claims that this instruction, intended for the defendants' benefit, may have led the jury to infer that Mr. Simone's statements were so tainted that they had to be considered under the special rules for accomplice testimony. Yet, this argument completely ignores that our instruction focused solely on the witness testimony. We even specifically referred to prosecution witnesses when instructing the jury on accomplice liability. *Id.* at 23–24. Not once did we state, or even hint, that the jury should consider Mr. Simone an accomplice and examine his advocacy in a skeptical light.[3] Furthermore, if Mr. Scarfo had been worried about the impact of this instruction on the jury's view of Mr. Simone, there was no objection to this instruction at trial or request for a curative instruction. We therefore dismiss this argument as frivolous.

### d. Invited Error

■ Finally, Mr. Scarfo's conflict of interest arguments must fail because any error in failing to disqualify Mr. Simone was invited by Mr. Scarfo himself. On direct appeal, the Third Circuit rejected arguments by some of Mr. Scarfo's co-defendants that they had conflicts of interest with Mr. Simone, who functioned as lead attorney in a unified defense. Speaking in a fashion directly pertinent to Mr. Scarfo, himself, the Court of Appeals noted:

> Of course, it would be a rare case in which a defendant, after convincing the trial court not to disqualify his attorney of choice, should be able to obtain a reversal of his conviction on the basis of a conflict of interest. The district court should not be placed in the no-win situation of being confronted with a claim of a Sixth Amendment violation if the defendant is convict-

ed, regardless of whether it has ceded to the defendant's expressed desire to be represented by his conflict-ridden attorney, or has taken it upon itself to disqualify the attorney. If the defendant after disclosure insists on continued representation by the attorney and the court permits the representation to continue, any error is invited.

*Pungitore,* 910 F.2d at 1143 n. 84; *see also Moscony,* 927 F.2d at 749 n. 10.

Thus, error, if any, in this court's decision to not disqualify Robert Simone from representing Mr. Scarfo was invited. The Applicant cannot now raise this issue on appeal.

### C. Double Jeopardy

■ Mr. Scarfo's Application further argues that his consecutive sentences for RICO and RICO Conspiracy were imposed in violation of the Fifth Amendment's prohibition against double jeopardy. He claims that "the District Court denied this double jeopardy claim in large part because it had been decided adversely to the petitioner on direct appeal in *United States v. Pungitore ...* applying the law of the case rational[e]." *Appellant's Memorandum* at 17. Applicant argues, like he did in his § 2255 motion, that *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), which held that consecutive sentences for continuing criminal enterprise and CCE Conspiracy violates double jeopardy, mandates resentencing.

We remind Mr. Scarfo that we did not base our decision to reject his § 2255 motion's double jeopardy argument solely on the "law of the case rational[e]." We specifically held that *Rutledge* did nothing to overturn the Third Circuit's ruling that consecutive sentences for RICO and RICO Conspiracy are proper:

> [E]ven if we were to reconsider [*Pungitore*] pursuant to *Rutledge,* there is nothing in that opinion which would give us pause. Contrary to Mr. Scarfo's interpretation, the Supreme Court case is quite frankly in line with the Third Circuit's assessment of § 846 and § 848. The *Rut-*

---

**3.** We of course also instructed the jury that counsels' statements are not evidence and that the jury should trust their own recollection of the evidence. Tr. 11/17/88 at 30.

818

*ledge* court followed the logic in *Jeffers [v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977)], and, using the "same offense" test, held that consecutive sentences could not be imposed for CCE and CCE conspiracy because they are the same offense. The Court made no comparison or connection between the CCE and RICO statutes. In fact, it noted that its holding was not contrary to the holding in *Garrett v. United States,* 471 U.S. 773, 794–95, 105 S.Ct. 2407, 2419–20, 85 L.Ed.2d 764 (1985) that conspiracy and the substantive crime that is the object of the conspiracy are distinct offenses. *Rutledge,* 517 U.S. at ——, 116 S.Ct. at 1247. As such, nothing in *Rutledge* undermines the ruling in *Pungitore* that RICO and RICO conspiracy are separate offenses because of the different elements of proof required; indeed, the rationale and holding of the cases are materially identical. We therefore decline to reevaluate the measured opinion of the Court of Appeals.

*Scarfo,* 970 F.Supp. at 429.

Since *Rutledge* does nothing to change the Third Circuit's holding in *Pungitore,* Mr. Scarfo's double jeopardy claim does not substantially show that his Fifth Amendment rights were denied. We therefore refuse to issue a certificate of appealability on this ground.

### III. CONCLUSION

None of Mr. Scarfo's claims make a substantial showing of the denial of his constitutional rights, as required in order to issue a certificate of appealability under § 2253(c)(2). Any conflicts of interest that existed between Mr. Scarfo and his attorney were (1) waivable and (2) properly waived by the Applicant. Furthermore, if any error existed in this court's decision not to disqualify Mr. Simone, that error was invited. Turning to Mr. Scarfo's second issue for appeal, the court's consecutive sentences for RICO and RICO Conspiracy do not violate the Fifth Amendment's prohibition against double jeopardy, even after *Rutledge.* We therefore refuse Mr. Scarfo's request to grant him a certificate of appealability; Applicant may not appeal our July 9, 1997 Order Denying Nicodemo Scar-

fo's Petition for Writ of Habeas Corpus Pursuant to § 2255, unless he obtains permission from the Court of Appeals.